# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1220

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jerry Adams, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 17, 2007
Filed: December 18, 2007

_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Jerry Adams pleaded guilty to 11 counts of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a). At sentencing, the district court[1] determined that Adams qualified as a career offender pursuant to U.S.S.G. § 4B1.1 and sentenced Adams to 188 months' imprisonment. Adams appeals the court's imposition of the career-offender enhancement. We affirm.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

I. *Background*

Between January 22, 2005 and April 10, 2005, Adams robbed several fast food restaurants and convenience stores in the Kansas City metropolitan area. A combination of witness statements, line-up identifications, and business surveillance videos linked Adams to the robberies, and he eventually confessed to the crimes. On July 5, 2006, Adams pleaded guilty to 11 counts of robbery,[2] in violation of 18 U.S.C. § 1951(a).

The presentence investigation report (PSR) reflected that Adams had five prior convictions for robbery, and provided the following information about those convictions:

1)      Jackson County, Missouri, Case No. CR87-4829
        On September 15, 1987, Adams robbed a Burger King in Grandview, Missouri, while armed with a deadly weapon. Adams was sentenced on June 9, 1988, to 15 years custody.

2)      Jackson County, Missouri, Case No. CR88-0151
        On December 20, 1987, Adams entered a Hardee's restaurant in Independence, Missouri, threatened the use of a dangerous weapon, and forcibly stole money. Adams was sentenced on June 9, 1988, to 15 years custody to run concurrent with case CR87-4829.

3)      Jackson County, Missouri, Case No. 88-0944
        On January 10, 1988, Adams robbed a Burger King in Kansas City, Missouri, while armed with a deadly weapon. Adams was

---

[2]Adams pleaded guilty to nine counts brought by an information filed in the Western District of Missouri, and two counts brought by an information filed in the District of Kansas. Adams had previously consented to the transfer of the Kansas information to the Western District of Missouri.

sentenced on June 9, 1988, to 15 years of custody concurrent with the above Jackson County cases.

4) Johnson County, Kansas, Case No. K0056385
On February 7, 1988, Adams robbed an individual by force while armed with a BB gun. Adams was sentenced on August 2, 1989, to 5–20 years in custody to run consecutive to the three above mentioned Jackson County, Missouri, cases.

5) Lyon County, Kansas, Case No. 88CR185
On January 5, 1988, Adams robbed a woman, by force, while armed with a deadly weapon. Adams was sentenced on July 30, 1992, to 10–30 years in custody to run concurrent to the Johnson County, Kansas, conviction, but consecutive to the three Jackson County, Missouri, cases.

The PSR concluded that Adams's five previous robbery convictions classified him as a career offender, pursuant to U.S.S.G. § 4B1.1. With the application of the career offender enhancement, Adams had a Category VI criminal history and a total offense level of 29, making his Guidelines range 151–188 months' imprisonment.

Adams objected to the application of the career offender enhancement. In support, he argued that his five prior robbery convictions were related cases as they were not separated by an intervening arrest, the crimes were a part of a common scheme or plan, and the offenses all occurred within about a four-month time frame. Thus, Adams asserted that his prior robbery convictions should not be counted as separate crimes of violence for purposes of § 4B1.1. At Adams's sentencing, the district court overruled Adams's objections and applied the career offender enhancement, sentencing Adams to 188 months' imprisonment on each of the 11 robbery counts, to be served concurrently.

## II. *Discussion*

We review the district court's interpretation and application of the Sentencing Guidelines de novo and its findings of fact for clear error. *United States v. Lynch*, 477 F.3d 993, 996 (8th Cir. 2007). In overruling Adams's objection to his career offender status, the district court determined that the prior robberies were not related. The court noted that Adams's prior crimes did not occur on the same occasion nor were they consolidated for trial or sentencing. The court specifically stated that the prior felonies "were five separate offenses occurring on five separate dates with five separate victims. They all retained their individual case number." The district court also found that the five prior robberies were not part of a common scheme or plan. We review these determinations of the district court as findings of fact and reverse only if clearly erroneous. *United States v. McCracken*, 487 F.3d 1125, 1127 (8th Cir. 2007).

Under § 4B1.1 of the Guidelines, persons who are convicted of a crime of violence or a controlled substance offense, who have at least two prior felony convictions for either crimes of violence or controlled substance offenses, are to be sentenced as "career offenders."[3] U.S.S.G. § 4B1.1. Section 4B1.2(c) of the Guidelines states:

> The term 'two prior felony convictions' means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of

---

[3]It is undisputed that Adams's prior robbery convictions and his current robbery convictions are felony crimes of violence for purposes of the career offender enhancement. *See* U.S.S.G. § 4B1.2 cmt. n.1. ("'Crime of violence' includes . . . robbery . . . .").

the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c).

*Id.* at § 4B1.2(c).

"Prior sentences imposed in 'related cases' are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)," while prior sentences imposed in unrelated cases are to be counted separately. *Id.* at § 4A1.2(a)(2) (2006).[4] The Guidelines commentary elaborates that where offenses were not separated by an intervening arrest, they are "considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." *Id.* at § 4A1.2, cmt. n.3.

Reviewing the record in this case, we find no error in the district court's imposition of the career offender enhancement. First, examining Adams's previous robbery convictions, we note that the five offenses occurred over a nearly five month span, with no two of the offenses occurring closer than five days apart. Thus, all five of the previous offenses occurred on different occasions. *See Lynch*, 477 F.3d at 997

---

[4]Effective November 1, 2007, Guidelines § 4A1.2(a)(2) and the commentary to that section (app. n.3)—which are cited, quoted, and relied upon throughout this opinion—were removed and replaced by amendment. The amendment, however, is inapplicable to this case, as we must apply the Guidelines that were in effect on the date of Adams's sentencing. *See* U.S.S.G. §§ 1B1.11(a), (b)(1) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," but "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the **ex post facto** clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.") (emphasis in original); 18 U.S.C. § 3553(a)(4)(A); *United States v. Valladares*, 304 F.3d 1300, 1302 (8th Cir. 2002). As Adams was sentenced on January 22, 2007, and the Guidelines applicable to him on that date did not violate the ex post facto clause, those Guidelines apply, not the Guidelines as amended effective November 1, 2007.

(finding that a defendant's prior violent crimes, committed one day apart, did not occur on the same occasion).

Second, we agree with the district court that Adams's prior robberies were not part of a common scheme or plan. "In assessing whether the offenses were part of a single common scheme or plan, we consider (1) the time period, (2) the participants, (3) the victims, (4) the motive, (5) the modus operandi, (6) the location, (7) the offenses, (8) whether a common investigation uncovered the offenses and (9) whether the defendant jointly planned the offenses." *Id.* at 996. Here, the five prior robberies occurred over a period of four to five months, with each robbery involving different victims, and each occurring at a different location. *See United States v. Mills*, 375 F.3d 689, 693 (8th Cir. 2004) (finding that a defendant's three prior burglaries, committed over a six-month period and involving a similar modus operandi, were not related as the crimes were committed in different locations, against different victims, and were not all planned at the same time); *Lynch*, 477 F.3d at 997 ("a single common scheme or plan involves something more than simply a repeated pattern of conduct"). Further, the record does not show that Adams planned the five robberies all at once, rather it appears that Adams simply committed the robberies as his need for money demanded. *See McCracken*, 487 F.3d at 1127 ("A 'common scheme or plan' implies that the crimes were jointly planned, or at least that the offender intended that the second would be committed as a consequence of the first"); *Mills*, 375 F.3d at 693.

Lastly, although Adams concedes that none of his prior robbery convictions were formally consolidated for sentencing, he argues that his prior Missouri robbery convictions were functionally consolidated for sentencing. Adams contends that because he pleaded guilty to and was sentenced for those three robberies on the same day, and the sentences for all three of those convictions were imposed concurrently they were, as a practical matter, consolidated. Adams also asserts that his two prior Kansas robbery convictions were functionally consolidated because the sentences were set to run concurrently.

-6-

Contrary to Adams's argument, Eighth Circuit precedent requires formal consolidation. Where, as here, there has been no formal order of consolidation filed, and each case retains its individual case number, the prior felonies were not consolidated for sentencing. *See United States v. Paden*, 330 F.3d 1066, 1068 (8th Cir. 2003) (finding prior felonies were not consolidated for sentencing even though the pleas were entered on the same day and the sentences were imposed concurrently, because the cases proceeded under separate docket numbers and were never formally consolidated); *United States v. Klein*, 13 F.3d 1182, 1185 (8th Cir. 1994) ("[T]wo or more sentences imposed at the same time are not related for purposes of § 4A1.2(a)(2) if the cases proceeded to sentencing under separate docket numbers, and there was no formal order of consolidation.") (internal quotations and citation omitted).

Assuming, arguendo, that the three prior Missouri robberies were consolidated for sentencing and that the two prior Kansas robberies were also consolidated, these two groupings of convictions would still place Adams in the status of a career offender. The resulting two separate, prior, unconsolidated robbery convictions would still give Adams at least two unrelated prior felonies of violence triggering the career offender enhancement. *See* U.S.S.G. § 4B1.1.

Having found that Adams's prior robbery convictions did not occur on the same occasion, were not part of a common scheme or plan, and were not consolidated for sentencing, we conclude that the district court did not clearly err in finding that Adams's prior robbery convictions were unrelated. Therefore, because Adams had at least two prior felony convictions for crimes of violence when he committed the instant robberies, the career offender enhancement was properly applied.

III. *Conclusion*

Accordingly, we affirm the decision of the district court.

_____