13-3227(L)
United States v. Mongo, Logan

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of October, two thousand fourteen.

PRESENT: DENNIS JACOBS,
　　　　　RAYMOND J. LOHIER, Jr.,
　　　　　　　　　　　<u>Circuit Judges</u>.<sup>*</sup>

- - - - - - - - - - - - - - - - - - - -X

**UNITED STATES OF AMERICA,**
　　　　<u>Appellee</u>,

　　　　-v.-　　　　　　　　　　　　　　　　　**13-3227(L)**
　　　　　　　　　　　　　　　　　　　　　　**13-3260(CON)**

**EQUAN MONGO, CLYDE C. LOGAN**
　　　　<u>Defendants-Appellants</u>.<sup>**</sup>
- - - - - - - - - - - - - - - - - - - -X

---

<sup>*</sup>Judge Christopher F. Droney, originally assigned to this panel, recused himself. The remaining two members of the panel, who are in agreement, decide this appeal in accordance with Internal Operating Procedure E(b) of the Rules of the United States Court of Appeals for the Second Circuit. <u>See</u> 28 U.S.C. § 46(d); <u>cf.</u> <u>United States v. Desimone</u>, 140 F.3d 457, 458-59 (2d Cir. 1998).

<sup>**</sup>The Clerk of Court is directed to amend the caption as above.

**FOR APPELLANTS:**    SAMUEL CONROY BRESLIN, Hinckley Allen & Snyder LLP, Albany, New York.

JAMES EDWARD GROSS, Albany, New York.

**FOR APPELLEE:**    JOHN M. PELLETTIERI, <u>for</u> Leslie R. Caldwell, David A. O'Neil, United States Department of Justice, Washington, District of Columbia.

Daniel Hanlon, <u>for</u> Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York.

Appeal from judgments of the United States District Court for the Northern District of New York (McAvoy, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgments of the district court be **AFFIRMED.**

Equan Mongo and Clyde C. Logan appeal from respective judgments of the United States District Court for the Northern District of New York (McAvoy, <u>J.</u>), sentencing Mongo after a jury trial to 120 months imprisonment and sentencing Logan after a guilty plea to 135 months imprisonment, each for conspiracy to distribute and possess with intent to distribute cocaine base (crack). On appeal, Mongo argues that: (1) the district court erred in admitting in evidence more than 200 grams of powder cocaine and the accompanying testimony of a Drug Enforcement Administration ("DEA") chemist; and (2) the evidence at trial was insufficient to support his conviction. Logan argues that he should be re-sentenced because his decision to plead guilty was based on the mistaken belief that the district court would not consider him a career offender as defined by the U.S. Sentencing Guidelines ("USSG"). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**I.  Mongo's Appeal**

The jury found Mongo guilty of one count of conspiring to distribute and possess with intent to distribute more than 28 grams of cocaine base.  Government witness Anton Boone testified that he had sold crack cocaine to Mongo in amounts of up to 50 grams in approximately seven transactions; government witness Davell Lee testified that he had made four or five crack cocaine sales to Mongo, with each sale involving 7 to 50 grams.  In an audio of phone calls between Mongo and Boone, intercepted pursuant to a Title III wiretap, the two negotiated sales of narcotics.  In the last intercept, recorded on November 13, 2011, Mongo confirms: "that sounds like a plan man."  The government further introduced in evidence more than 200 grams of powder cocaine, which had been seized from Boone during his arrest two days after that conversation; Boone testified he had intended to "cook" this powder into crack cocaine.  (A DEA chemist described the properties of the seized powder cocaine.)

Mongo contends that the district court erred by admitting the powder cocaine and the DEA chemist's testimony, which he insists were irrelevant and unduly prejudicial.  We review a district court's evidentiary rulings "only for an abuse of discretion," United States v. Khalil, 214 F.3d 111, 122 (2d Cir. 2000), and even such an abuse of discretion "does not warrant reversal if it is harmless," United States v. Rea, 958 F.2d 1206, 1220 (2d Cir. 1922).  The district court ruled, over Mongo's objections, that the powder cocaine and the DEA chemist's analysis of it were relevant and not unduly prejudicial because: other evidence already admitted had demonstrated a pattern in which Boone would buy powder cocaine in New York City, bring it to the Schenectady area, cook it into crack cocaine, and sell it to Mongo; and the jury could infer that some of the cocaine seized from Boone's car two days after the November 13 phone call was intended for Mongo.  The district court did not abuse its discretion in reaching this conclusion.

Mongo argues that the verdict was unsupported by sufficient evidence of an agreement or an intent to distribute.  In considering such an argument, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

3

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The jury heard Boone and Lee testify to a pattern of crack cocaine sales to Mongo, with up to 50 grams of cocaine base sold each time. The jury also heard Mongo negotiating crack cocaine prices in intercepted phone calls, in one of which Mongo confirmed, "that sounds like a plan man." Moreover, Boone and Lee testified that they never saw Mongo under the influence of crack cocaine himself, and Lee testified that in his experience purchasers of narcotics in this quantity and frequency resold the drugs. The trial evidence amply supports Mongo's conviction.

## II. Logan's Appeal

Pursuant to an agreement, Logan pled to one count of conspiring to distribute and possess with intent to distribute more than 28 grams of cocaine base. At the time of the agreement, the government estimated that Logan's offense level would be 26 and his criminal history category would be 4, corresponding to a Guidelines range under the Sentencing Guidelines of 92 to 115 months imprisonment. This estimate took into account Logan's 2007 state court felony conviction for possession of crack cocaine. The Probation Office later discovered a second prior felony conviction for possession of crack cocaine, from 2006. In light of the two prior felony narcotics convictions, the Presentence Investigation Report ("PSR") found that Logan was a career offender under USSG § 4B1.1, resulting in an offense level of 34 and a criminal history category of 6. Logan objected to the PSR's finding that the two prior felony convictions conferred on him career offender status.

At sentencing, the district court found that the PSR had correctly calculated Logan's career offender status, offense level, and criminal history category. The district court found that the advisory range was 262 to 327 months imprisonment. It sentenced Logan to 135 months imprisonment and eight years supervised release. On appeal, Logan contends that he pled guilty on the mistaken belief that he was not a career offender and that we should therefore direct the district court to re-sentence him on remand as if he were not a career offender.

We review sentences for reasonableness, United States v. Cossey, 632 F.3d 82, 86 (2d Cir. 2011) (per curiam), which "amounts to review for abuse of discretion," United States v. Cavera, 550 F.3d 180, 187 (2d Cir. 2008) (en

4

banc).  This concept applies both to "the sentence itself and to the procedures employed in arriving at the sentence." United States v. Verkhoglyad, 516 F.3d 122, 127 (2d Cir. 2008) (internal citation and quotation marks omitted). Underlying findings of fact are reviewed for clear error, see United States v. Broxmeyer, 699 F.3d 265, 278 (2d Cir. 2012), and this standard applies to a district court's determination that prior convictions are unrelated for purposes of career offender status, see United States v. Brothers, 316 F.3d 120, 122-23 (2d Cir. 2003).

The thrust of Logan's argument is that his plea agreement was unfair because the government did not alert him to his career offender status.  This Court "interpret[s] plea agreements according to principles of contract law . . . look[ing] to the reasonable understanding of the parties."  United States v. Rodgers, 101 F.3d 247, 253 (2d Cir. 1996).  Without suggesting that the government actually knew the full extent of his criminal history at the time of the plea agreement, Logan maintains that he was justified in relying on the government's estimate of his offense level and criminal history category.  The agreement in this case is replete with disclaimers that the government's estimate of the offense level and criminal history category was not binding and that it might change depending on the Probation Office's investigation.  Logan's reliance on the government's estimate was therefore not objectively reasonable.[1]

Logan further challenges his career offender status by contending that his prior felony convictions are not separate from each other or from the instant conviction. Prior convictions are separate from each other if the offenses "were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)," or else are separate from each other if they arose from different charging instruments and resulted in two sentences imposed on different days.

---

[1]  We need not consider here whether the same conclusion would obtain if Logan lacked effective assistance of counsel.

USSG § 4A1.2(a)(2); see id. § 4B1.2(c).  A prior conviction is unrelated to the instant conviction if the two were "not [] part of the same course of conduct or common scheme or plan."  Id. § 1B1.3 cmt. 8.

Logan's 2006 and 2007 felony convictions were separated by an intervening arrest, arose from different charging instruments, and resulted in different sentences imposed on different days.  Moreover, neither was part of the same course of conduct as Logan's offense in the instant case, a conspiracy which began in mid-2011 according to the indictment.  Cf. USSG § 1B1.3 cmt. 8 ex. 1 (describing successive cocaine sales "to the same person, using the same accomplices and modus operandi," but separated by an intervening arrest and prison sentence, as unrelated for purposes of career offender status).

Finally, Logan relies on a disparity between his 135-month sentence and the lesser sentences imposed on co-defendants.  However, "a disparity between *non-similarly situated* co-defendants is not a valid basis for a claim of error."  United States v. Fernandez, 443 F.3d 19, 28 (2d Cir. 2006), abrogated on other grounds by Rita v. United States, 551 U.S. 338 (2007).  Logan does not argue that his co-defendants are similarly situated to him in terms of their criminal history, so he has shown no error in the disparity between them.

For the foregoing reasons, and finding no merit in Mongo and Logan's other arguments, we hereby **AFFIRM** the judgments of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

6